HARRY A. SHUMAN ET AL., APPELLEES, V. A. HEATER, APPELLANT.

FILED MARCH 8, 1906.   No. 14,192.

1. **Sale:** WARRANTY. No particular form' of words is necessary to constitute a warranty as to the quality or soundness of chattels. Any form of words whereby a vendor, for the purpose of inducing a sale, makes affirmation pending the negotiations that the subject matter of the sale is of a particular quality or fitness will constitute a warranty, when relied upon by the purchaser.

2. Evidence examined, and *held* sufficient to show: (1) That the defendant sold a team to the plaintiff; (2) that he warranted the team to be sound; (3) a breach of such warranty.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*Morning & Ledwith,* for appellant.

*C. O. Whedon,* contra.

ALBERT, C.

In their petition the plaintiffs charge that on the 14th day of May, 1904, the defendant sold and delivered a span of horses and set of harness to the plaintiff, Harry A. Shuman, for the agreed price of $250, of which amount $15 was paid at the time, the remainder to be paid according to the terms of several promissory notes of that date secured by chattel mortgage on the property included in the sale and other personal property. The notes and mortgage were executed by both parties plaintiff, who are husband and wife, to the defendant. The plaintiffs further charge that the plaintiff vendee bought said team for use in teaming, draying and transfer business, as his vendor at the time well knew, and that he was induced to buy the team by the defendant's false and fraudulent representations that the team was sound and fit in every way for the use thereof contemplated by the vendee; that neither of the horses belonging to said team was sound or fit for use for the purpose for which they were bought by the vendee, but were lame, diseased and unfit for work. The petition also contains averments to the effect that the vendee, immediately upon his discovery that the defendant's representations with respect to the team were false, tendered and returned the team and harness to the defendant, and demanded a return of the cash payment made at the time of the sale, and of the notes for the deferred payments and the cancelation of the mortgage

securing them. The defendant declined to rescind the sale, and the prayer of the petition is for judgment for the amount of the cash payment, a return of the notes and the cancelation of the mortgage, etc.

The theory of the defense is that at the time of the sale the team belonged to a third party who was indebted to the defendant in the sum of $1,300, and whose indebtedness was secured by a chattel mortgage on the team and other property. That, in order to enable a third party to make the sale and the vendee to purchase the team, it was arranged that the defendant should release the mortgage of the third party as to this team, and that the vendee should pay the defendant $15 and give him security for $235 on the team and other personal property, and that the entire $250 should be credited on the indebtedness of the third party to the defendant. The answer admits the payment of the $15, the execution and delivery of the notes and the mortgage mentioned in the petition, and the plaintiff's tender of a return of the property. It also includes a cross-petition, praying for the foreclosure of the mortgage. The court found all the issues in favor of the plaintiffs and entered a decree accordingly. The defendant appeals.

It is first insisted that the evidence is insufficient to sustain a finding that the defendant sold the team to the vendee, one of the plaintiffs in the case. That was the principal question litigated in the case. The evidence bearing thereon covers the major portion of a bill of exceptions, consisting of more than 160 pages. On that question it must suffice to say that the vendee's testimony, to the effect that the defendant was the vendor of the team and harness, is flatly contradicted by the defendant. Both parties are to a certain extent corroborated by other witnesses and by facts and circumstances appearing in evidence. The witnesses were before the trial court, who was in a position to observe their appearance and demeanor while testifying, and in many other ways had a better opportunity to judge of their credibility than we,

who have nothing to guide us but the written transcript of their evidence. But were we to be guided by that alone we are not prepared to say that we should arrive at a different conclusion than that reached below. On the contrary we are inclined to think our conclusion would be the same.

It is next contended that the evidence is insufficient to show that there was any warranty on the part of the defendant with respect to the condition of the team or its fitness for the work for which it was bought. The testimony of the plaintiff vendee upon this point, corroborated in many particulars, is as follows: "Well, of course, it is hard for me to remember all that he said, but I asked him, and explained very thoroughly, that I not only wanted the team for the job with the telephone people, as long as it lasted, to do that work with, when I was through with that I wanted to do dray work, also to run a storage room. He says the team is sound. I believe they are sound in every way, good for my work all the time; told me how nice a team they was, how strong; also spoke about having seen them pulling a building. I think we talked about them moving this building. Q. What did he say about their being sound? A. He said they was sound in every way, didn't know anything wrong with them. * * * Q. Now, did you know the actual condition of that team prior to the time you bought it. A. No, I didn't. Q. Upon what did you rely on buying it? A. On what Mr. Heater told me. Q. What did he tell you? A. I asked him if the team was sound and fit for my work, and explained thoroughly. I told him I didn't expect to finish doing that telephone work—that was light work. If I got money enough to pay for them and was situated right, I wanted to put them on a van. Q. What did he say about their being fit? A. Said that was the very use they was adapted for. Wasn't made to trot, but they were draught horses. Q. He said they were sound? A. Yes, sir; said they were sound in every way. Q. Did you rely upon that statement in buying the team? A. I

relied on him for everything. * * * Q. Did you ever have a conversation with Mr. Ferdinand about buying this team from him? A. No, sir; I didn't."

No particular form of words is necessary to constitute a warranty as to the quality or soundness of chattels. Any form of words whereby a vendor, pending negotiations, for the purpose of inducing a purchase, makes affirmation that the subject matter of the proposed sale is of a particular quality or fitness will constitute a warranty, when relied upon by the purchaser. *Little v. Woodworth,* 8 Neb. 281; *Erskine v. Swanson,* 45 Neb. 767; *Unland v. Garton,* 48 Neb. 202. This case falls within the rule just stated, and we consider the evidence amply sufficient to sustain a finding of a warranty in the sale of the team.

Lastly, the defendant contends that the evidence is insufficient to sustain a finding of a breach of the warranty. The evidence upon this point shows that the horses were delivered to the vendee on Saturday, about 3 or 4 o'clock, and did some light work that afternoon. The next day they stood in the barn. They were driven on the following day, and in the afternoon one of them was found lame. On the following morning his leg was swollen and his condition such that he was unable to work. A skilled veterinarian was called to examine the horse, and he testifies that the horse was suffering from a disease called water farcy, Monday morning fever, or big leg, and he testifies that the horse showed marks of having had previous attacks of the disease. The testimony of another witness was to the effect that he had been acquainted with the horse some months before the sale in question, had seen him at work, and that he was lame and unsound during that time. This evidence certainly warranted a finding that the team was not sound at the time of the sale, and defendant's previous transactions, with the team would warrant the inference that he knew its condition.

We are satisfied that the decree of the district court is

amply sustained by the evidence on every essential point, and we therefore recommend that it be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is